**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Robert Breest

    v.                                    Case No. 18-cv-908-SM

Gordon MacDonald, New Hampshire
Attorney General

**REPORT AND RECOMMENDATION**

Pro se plaintiff Robert Breest, a New Hampshire prisoner presently housed in a Massachusetts prison, filed this action pursuant to 42 U.S.C. § 1983. See Oct. 4, 2018 Compl. (Doc. No. 1) ("Compl."), at 1. Breest has been incarcerated nearly fifty years pursuant to a first-degree murder conviction and has previously filed a number of collateral actions seeking to overturn his conviction. See State v. Breest, 169 N.H. 640, 642 & n.1 (2017) ("Breest 2017") (collecting cases).

The present action relates to a 2012 DNA test using the "Y-STR" method of analysis, which examined male genetic material found under the fingernails of the victim of the murder of which Breest was convicted. The 2012 test revealed two DNA "profiles" in the genetic material: one "major" and one "minor." Breest was excluded as the source of the major profile, but he was not excluded as the source of the minor profile.

In this action, Breest seeks an order from this court directing the defendant, the New Hampshire Attorney General, to

search the "U.S. Y-STR DNA database" and "report the results," including whether there is a "match." Compl. at 1, 11. Breest also seeks an order directing the Attorney General "to reveal the [identity] of the single match in the minor profile . . .." Id. at 11.

The defendant moves to dismiss Breest's claim. See Oct. 1, 2019 Def.'s Mot. to Dismiss (Doc. No. 14). Breest opposes dismissal. See Oct. 15, 2019 Pl.'s Obj. (Doc. No. 15). For the reasons that follow, the undersigned magistrate judge recommends that the district judge dismiss Breest's complaint.

## Motion to Dismiss Standard

The defendant's motion to dismiss is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Dismissal pursuant to Rule 12(b)(6) is proper if – after accepting all well-pleaded facts as true and viewing them in the light most favorable to [Plaintiff] -- the complaint fails" to state a claim upon which relief might be granted. Villeneuve v. Avon Prods., Inc., 919 F.3d 40, 49 (1st Cir. 2019). Conclusory allegations, however, are disregarded. Dumont v. Reily Foods Co., 934 F.3d 35, 39-40 (1st Cir. 2019). The scope of the court's review is generally limited to "'facts and documents that are part of or incorporated into the complaint,'" as well as "'documents incorporated by reference . . . , matters of

public record, and other matters susceptible to judicial notice.'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted).  As plaintiff is proceeding pro se in this action, the court construes his pleadings liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

**Background**

I.  Murder of Susan Randall

Susan Randall was last seen alive on the evening of February 27, 1971.  See State v. Breest, 116 N.H. 734, 738-39 (1976).  On that evening, witnesses saw Randall hitchhiking on Granite Street in Manchester.  See id. at 739.  Witnesses saw Randall enter a car like Breest's car, which was piloted by a person fitting Breest's description.  See id.  Breest denied being present in Manchester, but several witnesses placed Breest in the area around the time Randall was last seen on February 27.  See id. at 739-40.

On March 2, 1971, a state highway employee discovered Randall's body lying on ice covering the Merrimack River near Concord, New Hampshire.  See id. at 737-38.  A medical examiner conducted an autopsy, during which he clipped Randall's fingernails.  See Breest 2017, 169 N.H. at 644; Breest, 116 N.H. at 738.  The medical examiner determined that Randall died in the late evening of February 27 from multiple blunt injuries

3

caused by a beating.  See Breest, 116 N.H. at 738.

Breest was charged with first-degree murder for Randall's death.  See id. at 737.  A jury found Breest guilty, and he was sentenced to life in prison.  See id. at 753.  The New Hampshire Supreme Court ("NHSC") affirmed the conviction.  See id. at 756. Breest maintains his innocence "and has instituted numerous collateral proceedings in an effort to secure his freedom." Breest 2017, 169 N.H. at 642 & n.1.  Breest remains incarcerated.

## II.  DNA Testing

This case arises from DNA tests and analyses on genetic material found on the fingernail clippings taken during Randall's autopsy.  The NHSC summarized the results of these DNA tests:

> Between 2000 and 2008, three rounds of DNA testing were conducted on Randall's fingernail clippings. None of these tests excluded the defendant as the contributor of the DNA. In 2012, with the State's consent, the defendant obtained another round of DNA testing. Because of the analyst's use of new technology, the DNA test indicated that the fingernail clippings contained DNA from two different males. The defendant could not be excluded as the contributor of one of the male DNA profiles, but he was excluded as the contributor of the other profile.

Breest 2017, 169 N.H. at 646.  Based on the results of the 2012 testing and analysis, Breest moved for a new trial in the state court under N.H. Rev. Stat. Ann. § ("RSA") 651-D:2, VI(b).  See

Breest 2017 (Rule 7 Notice of Discretionary Appeal filed Aug. 28, 2015) (Doc. 14-2, at 28).

Under RSA 651-D:2, "[i]f several prerequisites are met," a prisoner can petition the court for forensic DNA testing of biological material. See Breest 2017, 169 N.H. at 646 (summarizing RSA 651-D:2). If the results of the DNA test "are favorable to the petitioner," then the court "shall order a hearing." Id. After the 2012 DNA test was conducted, the state court held a hearing to determine whether a new trial was warranted. See id. at 646-47. At that hearing, Breest offered the testimony of Huma Nasir, who testified as an expert about the 2012 DNA testing, which used the "Y-STR" method of analysis.[1] See id. The State called Dr. Charlotte Word as an expert on the same issue. See id. at 647.

---

[1] According to the Superior Court's summarization of Nasir's testimony, the "Y-STR" method "is a specialized testing technique that ignores any female DNA in a sample and only tests for male DNA." State v. Breest, No. 217-1972-CR-789 (N.H. Super. Ct., Merrimack Cty. July 27, 2015) (order denying motion for new trial) (Doc. 14-2, at 29). The Y-STR method tests the data contained in Y-chromosome DNA, which is found in males only and, for that reason, is inherited by men through their paternal lineage. See id. (Doc. No. 14-2, at 30).
Because it is passed from father to son, the data found in Y-chromosome DNA is not unique absent a mutation. See id. at 30-31. Therefore, the Y-STR method cannot, with the same high degree of probability as an autosomal STR test, identify a single individual as being the source of particular genetic material. See id. Rather, the Y-STR test can identify a particular genetic profile likely shared by multiple individuals. Id.

5

The state court denied Breest's motion for a new trial, finding that the results of the 2012 Y-STR DNA testing and analysis were more inculpatory than exculpatory. See id. The court found that Breest failed to show that the new DNA evidence "would probably result in an acquittal." Id. at 647.

The New Hampshire Supreme Court affirmed, holding, in relevant part:

> [A]ll four of the DNA tests conducted since 2000 have failed to exclude the defendant as the source of some of the male DNA under Randall's fingernails, thus further contradicting his position at trial that he had never interacted with Randall and was not in the State when she was killed. This is especially consequential in light of the relatively low prevalence of the alleles (the variational forms of a gene appearing on a chromosome) tested on the fingernail clippings, according to evidence presented to the trial court. The alleles, which are consistent with the defendant's alleles, statistically appear in the Caucasian population only "roughly one time out of 140,000 individuals[,] in the African American population roughly once in 26,000 individuals and in the Hispanic population approximately once in 32,000 individuals." Viewed together with the evidence presented at the defendant's original trial, we agree with the trial court that, even considering the 2012 test results, the DNA evidence is "more inculpatory than exculpatory."

Id. at 654 (citation omitted).

III. Breest's Claim

Breest brought this action for injunctive relief under 42 U.S.C. § 1983. Specifically, Breest asks the court to direct the Attorney General to "enter the results of the

6

major DNA profile of the biology found under Susan Randall's fingernails . . . into the U.S. Y-STR database and report on the results." Compl. at 1. Breest also asks the court to direct the Attorney General to "reveal who the single match is in the U.S. Y-STR database of the minor profile." Id.

Construed liberally, Breest's complaint asserts a claim under the Fourteenth Amendment's due process clause.[2] He asserts that he has a right to DNA testing as a matter of due process and that he has been denied this right by New Hampshire's failure to disclose whether there is a match in the major DNA profile, and by its failure to disclose the alleged African-American match for the minor DNA profile in the Y-STR database. Breest contends that he was, in fact, not a match to the minor DNA profile because he only matched at two of seventeen loci, while the FBI standard for a match requires a match at ten of seventeen loci. Further, Breest asserts that the minor DNA profile was an African-American profile, and that he is not African-American.

---

[2] The court liberally construes filings and pleadings by pro se parties, and the court has done its best to "intuit the correct cause of action" based on the facts and theories alleged in Breest's complaint. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); Tierney v. Town of Framingham, 292 F. Supp. 3d 534, 540-41 (D. Mass. 2018).

**Discussion**

I.  Attorney General's Motion to Dismiss

The Attorney General moves to dismiss Breest's complaint on the ground that it does not set forth a cognizable claim for relief.  Breest opposes dismissal.

The Attorney General argues that the technology behind the 2012 Y-STR DNA test precludes Breest from obtaining evidence that exonerates him because the test did not rule him out as a contributor of the minor DNA profile.  Similarly, the Attorney General argues that it would be technologically impossible for the State to do what Breest asks because law enforcement cannot use data produced from a Y-STR DNA test in the National DNA Index System/Combined DNA Index System ("CODIS").

Arguments based on facts outside the allegations in the complaint, however, are inappropriate under Federal Rule of Civil Procedure 12(b)(6), which limits the court's analysis to the allegations in the complaint.  See e.g., Dumont, 934 F.3d at 39-40.  To establish the technological impossibility of Breest's request, the Attorney General cited to legal opinions from other, unrelated cases that summarized expert testimony presented in those cases.  See Oct. 1, 2019 Def.'s Mem. (Doc. 14-1, at 6-8).  The Attorney General cannot circumvent the limitations of Rule 12(b)(6) by relying on legal opinions to

8

establish facts. Even so, Breest did not ask the Attorney General to identify matches to the Y-STR data using the CODIS database. Compl. at 1, 11; Oct. 15, 2019 Pl.'s Obj. (Doc. No. 15, at 8). Rather, he requested that law enforcement identify matches from the "U.S. Y-STR database," a database that was discussed at the state court hearing. Breest 2017, No. 217-1972-CR-789 (N.H. Super. Ct., Merrimack Cty.) (May 20, 2015 Hr'g Tr.) ("May 20, 2015 Tr.") (Doc. No. 1-1 at 9); see also Oct. 15 2019 Pl.'s Obj. (Doc. No. 15, at 8).

## II. Dismissal as Patently Meritless

Despite the Attorney General's failure to raise grounds warranting dismissal, Breest's complaint should still be dismissed. A court may dismiss a complaint on grounds not raised by the parties if "the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption." Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand.").

Broadly, in his complaint, Breest seeks to vindicate a postconviction right of access to DNA evidence under the Fourteenth Amendment's due process clause. See Compl. at 1, 5-

6, 10-11. Breest also points to the maxim "ubi jus ibi remedium," meaning that where a legal right exists, there must be some useful remedy for violation of that right. See id. at 5-6; see also Knight v. Town of Glocester, 831 F.2d 30, 32 (1st Cir. 1987). Breest, however, has been provided access to the DNA evidence in his case, and he has had a fair opportunity to obtain the evidence he seeks in this action in the proceedings before the state court.

A due process claim relating to postconviction discovery requires the plaintiff to show that the state's postconviction discovery procedures "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental' or 'transgress[] any recognized principle of fundamental fairness in operation.'" Tevlin v. Spencer, 621 F.3d 59, 70 (1st Cir. 2010) (quoting Dist. Atty.'s Office v. Osborne, 557 U.S. 52, 69 (2009)).³ Under RSA 651-D:2, New

---

³In 2007, this Court found that Breest had a "cognizable due process claim" "[t]o the extent there is a reasonable probability that the results of the DNA testing requested by Breest would have affected the outcome of his state court proceedings if those results had been available at the time of his conviction[.]" Breest v. N.H. Atty. Gen., 472 F. Supp. 2d 116, 121 (D.N.H. 2007). However, in 2009, the Supreme Court held that there is no freestanding (i.e., substantive) postconviction due process right to access to DNA evidence. See Osborne, 557 U.S. at 72. Breest is therefore limited to a claim that the state's postconviction procedures, as provided, are inadequate. See id. at 69. As explained in this Report and Recommendation, New Hampshire provides a limited statutory

10

Hampshire provided Breest with a postconviction procedure which he used to obtain the 2012 DNA testing and analysis. The state court held a hearing to determine whether the DNA evidence warranted ordering a new trial. In those proceedings, Breest had a full opportunity to make the same requests as he makes in the present claim for injunctive relief and to present his case as to why the DNA testing and analyses exonerated him. See RSA 651-D:2.

The record shows that Breest was able to cross-examine the state's expert witness – and present his own expert witness – about the results of the 2012 DNA test and analysis. See Breest 2017, 169 N.H. at 646-47. Breest could have asked either his expert or New Hampshire's expert about whether the analysis of the Y-STR DNA resulted in any matches in the U.S. Y-STR database. In fact, he did. See May 20, 2015 Tr. (Doc. No. 1-1, at 5, 10-11) ("And the [U.S. Y-STR] database returned one profile; correct?").

Breest also had the opportunity to appeal the state court's adverse decision to the NHSC, which he did. Under RSA 651-D:2, Breest even retains a right, subject to certain limitations, to seek new DNA testing and evidence if new technology is developed. Breest has been provided sufficient process to

---

postconviction right of access to DNA evidence, which Breest was able to utilize.

vindicate the extent of his right of postconviction access to DNA evidence.

Lastly, although his complaint alleges faults in his access to evidence, Breest also argues the merits of the state court's interpretation of the 2012 Y-STR DNA test and analysis. In that argument, Breest essentially asserts that the state court incorrectly decided his motion for a new trial under RSA 651-D:2. See Oct. 15, 2019 Pl.'s Obj. (Doc. No. 15, at 2-5). Breest, however, cannot use this court as a vehicle to challenge the state court's substantive findings regarding whether the 2012 Y-STR DNA test exonerates him. See, e.g., Lance v. Dennis, 546 U.S. 459, 463 (2006) ("[U]nder what has come to be known as the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."). To the extent Breest's complaint is intended to be a challenge to the state court's decision with respect to the 2012 Y-STR DNA test, it is barred under the Rooker-Feldman doctrine. See id.

Furthermore, to the extent Rooker-Feldman does not apply, collateral estoppel bars the court from revisiting the state court's decision. Collateral estoppel bars an issue that was adjudicated in an earlier proceeding from being relitigated by the parties. See Robb Evans & Assocs. v. United States, 850 F.3d 24, 31 (1st Cir. 2017); see also Johnson v. Mahoney, 424

12

F.3d 83, 93 (1st Cir. 2005) ("It is well-established that the doctrine of collateral estoppel applies in civil rights actions brought pursuant to 42 U.S.C. § 1983."). "Federal courts must give to state-court judgments the same preclusive effect as would be given by the courts of the state from which the judgments emerged." Johnson, 424 F.3d at 93.

New Hampshire gives preclusive effect to an issue decided by a state-court judgment if:

> (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment.

Garod v. Steiner Law Office, PLLC, 161 A.3d 104, 107 (N.H. 2017). To the extent that Breest claims here that the 2012 Y-STR DNA test exonerated him, all of the elements of collateral estoppel are present. For the reasons discussed above with regard to Breest's due process claim, Breest had a full and fair opportunity to litigate the issue of whether the 2012 DNA testing exonerated him in the state court, and the state court ruled against him on that issue. Therefore, Breest is barred from revisiting that issue in a § 1983 action in this court.

For those reasons, Breest fails to allege any actionable

13

legal theory on which the relief he seeks could be granted, and his complaint cannot be saved by amendment with additional facts. Breest's claim is patently meritless and, further, beyond all hope of redemption. Therefore, the district judge should dismiss Breest's complaint.

## Conclusion

For the foregoing reasons, the undersigned recommends that the district judge dismiss Breest's complaint and DENY the Attorney General's motion to dismiss (Doc. No. 14) as moot. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

February 20, 2020

cc:  Robert Breest, pro se
     Elizabeth C. Woodcock, Esq.